GARRETT v. CHRYSLER CORPORATION.

WORKMEN'S COMPENSATION—PARTIAL DISABILITY—DRUNKENNESS—
MORAL TURPITUDE.
  Pipe fitter was not entitled to an award of compensation for
  partial disability, where after he had returned to work follow-
  ing partially disabling injury to hand, he was discharged be-
  cause of repeated voluntary drunkenness, since he forfeited his
  right to compensation as suitable employment at no wage loss
  was available and the drunkenness which indicated his moral
  turpitude, decreased his efficiency as an employee, was detri-
  mental to the morale of his fellow employees and subversive
  to the employment (CL 1948, § 412.10).

  Appeal from Workmen's Compensation Commis-
sion. Submitted April 9, 1953. (Docket No. 34,
Calendar No. 45,626.) Decided June 22, 1953.

  James W. Garrett presented his claim for com-
pensation against Chrysler Corporation for injuries
sustained while in its employ. Award to plaintiff.
Defendant appeals. Reversed.

  *Alexander, Cholette, Buchanan, Perkins & Conk-
lin,* for plaintiff.

  *Lacey, Scroggie, Lacey, Buchanan & Jones,* for de-
fendant.

  REID, J. On leave granted, defendant appeals
from an award by the Michigan workmen's compen-

sation commission of compensation to plaintiff of $20.39 per week for partial disability computed in accordance with the provisions of part 2, § 10 of the workmen's compensation act, CL 1948, § 412.10 (Stat Ann 1950 Rev § 17.160), from October 20, 1950 until the further order of the commission.

Plaintiff was employed by defendant as a pipe fitter with a weekly wage of $65.20.   On August 13, 1948, plaintiff sustained an injury to the left hand and compensation was paid for approximately 6 weeks until plaintiff resumed employment.   In January, 1949, it became necessary to amputate the little finger of the left hand and he was off duty 5 days but was paid for the statutory period for the specific loss of the little finger.   In July of 1949, it became necessary to amputate the middle finger and although plaintiff was off work only 2 days, he was paid the statutory period for the loss of the middle finger.   He continued in the employment of defendant until September 16, 1949.

We quote, in part, from the opinion of the commission:

"It is reasonable to assume that plaintiff could have continued doing that part of a pipe fitter's work which he had demonstrated his ability to perform had the employer seen fit to continue him in its employ.   Plaintiff had been reprimanded on 2 or 3 occasions for coming to work under the influence of liquor.   He was given a disciplinary layoff for 3 days April 15, 1949 because he had been drinking before he came to work.   He came to work September 17, 1949 under the influence of liquor and was sent home. He was given another disciplinary layoff of 5 days beginning September 19th as the result of the September 17th incident.   Plaintiff was to report for work on the morning of September 26, 1949 following the 5-day layoff.   He reported for work on September 27th and told Mr. Madeley, the maintenance superintendent, his supervisor, that he had . been

unavoidably detained at his home in Buffalo, New York where he had gone on personal business. A similar explanation was also given to Mr. Butts in defendant's personnel office but he was discharged.

"Defendant contends that plaintiff's right to compensation should be forfeited because suitable employment was available and his discharge was precipitated by acts of misconduct involving moral turpitude, relying on the case of *Todd* v. *Hudson Motor Car Co.,* 328 Mich 283."

Mr. Madeley, maintenance superintendent of defendant's plant, testified:

"We discharged him because of his conduct."

The commission distinguished the instant case from the *Todd Case* because Todd was engaged in criminal activity (*i.e,* gambling) in the plant.

In the *Todd Case,* we say, at page 289:

"Where he [the disabled employee given favored employment] engages in criminal gambling activities while at work and is discharged for that cause, he will not be entitled to compensation for the resultant loss of earnings."

We consider that the instant case falls within the reasoning in the *Todd Case.* Plaintiff Garrett was being furnished with suitable employment at no wage loss. His voluntary drunkenness was the reason for his discharge, and not his physical condition resulting from his injuries. His several voluntary acts of drunkenness, indicating and caused by his moral turpitude, decreasing his efficiency as an employee, detrimental to the morale of his fellow employees and subversive of the employment, were the efficient cause of the termination of his employment.

The award is reversed. Costs to appellant.

Dethmers, C. J., and Adams, Butzel, Carr, Bushnell, Sharpe, and Boyles, JJ., concurred.